WALTER J. GABRIEL, ESQ,
Louisiana Bar No. 32461
Admitted *Pro Hac Vice*
MELVILLE JOHNSON, PC
22 Seventh Street, NE
Atlanta, Georgia 30308
Telephone:  (404) 724-0000
Facsimile:    (404) 724-0060
Email:  wgabriel@melvillejohnson.com

JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
DICKINSON WRIGHT PLLC
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128
Telephone:  (702) 541-7888
Facsimile:  (702) 541-7899
Email:  jdlowry@dickinson-wright.com

Attorneys for Plaintiff
*Laura Martinez*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LAURA MARTINEZ,

            Plaintiff,

v.

ERIC K. SHINSEKI, SECRETARY,
DEPARTMENT OF VETERANS' AFFAIRS,

            Defendant.

Case No.: 2:09-CV-01354-RLH-(RJJ)

**PLAINTIFF'S Response to Defendant's Motion for Summary Judgment.**

       COMES NOW Plaintiff, Ms. Laura Martinez, through her undersigned counsel at law, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Rules 7-2 and 56-1 of the Local Rules for the United States District Court of the District of Nevada, files Plaintiff's Response to Defendant's Motion for Summary Judgment, and hereby respectfully requests this Court to deny Defendant's Motion for Summary Judgment in full.

       In support of her Response, Plaintiff submits the attached Memorandum of Fact and Law.

Respectfully submitted this 6th day of September, 2011.

 /s/ Walter J. Gabriel
WALTER J. GABRIEL
Louisiana Bar No. 32461
*Attorney for Plaintiff*
MELVILLE JOHNSON, P.C.
22 Seventh St., N.E.
Atlanta, GA 30308
Phone: (404) 724-0000
Facsimile: (404) 724-0040

WALTER J. GABRIEL, ESQ,
Louisiana Bar No. 32461
Admitted *Pro Hac Vice*
MELVILLE JOHNSON, PC
22 Seventh Street, NE
Atlanta, Georgia 30308
Telephone:  (404) 724 - 0000
Facsimile:   (404) 724 - 0060
Email:  wgabriel@melvillejohnson.com

JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
DICKINSON WRIGHT PLLC
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128
Telephone:  (702) 541-7888
Facsimile:  (702) 541-7899
Email:  jdlowry@dickinson-wright.com

Attorneys for Plaintiff
*Laura Martinez*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| LAURA MARTINEZ,<br><br>              Plaintiff,<br><br>v.<br><br>ERIC K. SHINSEKI, SECRETARY,<br>DEPARTMENT OF VETERANS' AFFAIRS,<br><br>              Defendant. | Case No.: 2:09-CV-01354-RLH-(RJJ)<br><br>**PLAINTIFF'S Memorandum of Fact and Legal Authority in Response to Defendant's Motion for Summary Judgment.** |

COMES NOW Plaintiff, Ms. Laura Martinez, through her undersigned counsel at law, and hereby presents this Memorandum of Fact and Legal Authority in Response to Defendant's Motion for Summary Judgment, showing the Court why Defendant's Motion for Summary Judgment should be denied. In support thereof, Plaintiff states the following:

# I. PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTESTED FACTS

1.  Martinez began her employment with the VA on October 20, 1997, as a Program Support Clerk in the Human Resources Department at the VA Southern Nevada Health Care System (VASNHS) in Las Vegas.  (Ex. 1 attached hereto.)  The Nevada Bureau of Vocational Rehabilitation provided a letter to the VA at the time Martinez applied for this position, which stated:

> Laura Martinez is a woman classified as severely disabled by Federal Guidelines with a disability of central auditory processing disorder.

> I believe Ms. Martinez meets the qualification requirements for a clerical or data entry position.  She has entry level clerical and office support experience and education.  It is not anticipated that she would require any accommodations to perform the duties of this type of position.

(Ex. 2.)

**Plaintiff's Response:** Admitted.


2.  Central auditory processing disorder (CAPD) is a condition which makes it more difficult to receive information through the spoken word than through visual means or through personal demonstration.  (Ex. 9 (Martinez dep.), pp. 16-17.) The VA hired Martinez as a "Schedule A" employee, a position in the Excepted Service (to distinguish it from the Competitive Service) reserved for handicapped employees.  (Ex. 5, p. 80.)  See 5 CFR § 213.3102(u).  In 1998, Martinez became a Personnel Assistant in the HR Department.  (Ex. 4, p. 1).)  In 2000, Martinez became a "career conditional" appointee in the Competitive Service and she was no longer in Schedule A or Excepted Service status.  (Id. p. 2; Ex. 5, p. 80; Ex. 24, pp. 9-10.)  See 5 CFR § 213.3102(u)(6).  In 2001, Martinez became a "career tenured" employee in the Competitive Service.  (Ex. 24, p. 10.).

**Plaintiff's Response:** Admitted.


3.  Martinez' supervisor throughout her employment at the VA was Don Zurfluh, who at all relevant times was the Chief of Human Resources of the VASNHS. (Ex. 6, par. 1.)

4

Zurfluh knew that Martinez had CAPD throughout Martinez's employment with the VA.  (Ex. 5, pp. 95-96, 118.).

**Plaintiff's Response:** Admitted.


4.   Martinez's duties as a Personnel Assistant included staffing the Human Resources reception desk, advising applicants for employment with the VASNHS about employment opportunities, posting vacancy announcements on an internet website, setting up files for open vacancies, placing applications in those files, generating related correspondence, generating and receiving e-mail, and many related tasks.  (Exs. 7 (2001 job description) and 8 (2006 job description); Ex. 9, p. 65.)

**Plaintiff's Response:** Admitted.


5. VASNHS would select a job candidate from among the qualified applicants for a given job opening.  The selected candidate was then required to undergo a background check.  The first step in the background check was for the candidate to fill out a paper form known as Standard Form 85 (SF 85).  One of Martinez's duties as Personnel Assistant, from at least 2003 through mid-2006, was to receive the SF 85 prepared by a candidate, ensure it was properly filled out, returning the form to the candidate for more information if necessary, and then forward the SF 85 to the Office of Personnel Management (OPM), another federal agency which performed the background check on the VASNHS job candidate.  (Ex. 5, p. 71; Ex. 9, pp. 81-82.)  Martinez also fingerprinted the candidate.  (Ex. 9, p. 93.)  The job description for Martinez's position described these duties as follows from 2001 through mid-2006 (Ex. 7, p. 2):

> Prepares necessary forms and fingerprints for the conduct of National Agency Check/Investigation to determine suitability of employees hired at VASNHS. This includes interacting with the OPM office as necessary to insure completeness of the submitted package.  Sees the process through to adjudication by the Chief, HRMS and maintains the related files.

**Plaintiff's Response:** Admitted.

6.      Martinez performed these duties regarding hard-copy SF 85s for background checks, and her other job duties, competently throughout the period 2001 through mid-2006, without the need for any accommodations.  (Ex. 5, p. 73.)

**Plaintiff's Response:**  Admitted, with clarification.

Plaintiff admits Defendant's assertion that Plaintiff competently performed her duties. Plaintiff also admits Defendant's assertion to the extent that it means Plaintiff did not make a formal request for reasonable accommodation during the time period specified.

Plaintiff wishes to clarify that although she did not make any formal requests for reasonable accommodation prior to April 2007, Plaintiff testified that she frequently required special assistance—mainly in the form of repeated, visual instruction—to perform her duties and responsibilities. Plaintiff's Ex. 1, pp. 61-62.

7.      In mid-2006, OPM adopted a new system for obtaining the information necessary to perform background checks, known as Electronic Questionnaires for Investigation Processing (e-Qip).  (Ex. 5, pp.71-72.)  Under e-Qip, the SF 85 was no longer to be prepared or submitted to OPM on paper.  Instead, the SF 85 form was now prepared online by the job candidate and submitted directly to OPM electronically.  (Id.)

**Plaintiff's Response:**  Admitted.

8.      When OPM adopted e-Qip, Zurfluh issued a redescription of the Personnel Assistant position held by Martinez.  In place of the paragraph describing handling the hard-copy SF 85, quoted in paragraph 5 above, the redescription included this paragraph referring to the job duties relating to e-Qip (Ex. 8, p. 2): Has primary responsibility for electronic fingerprinting and related duties associated with all levels of background investigations.  As requested, prepares necessary forms for the conduct of National Agency Check/Investigation to determine suitability of employees hired at VASNHS.

**Plaintiff's Response:**  Admitted in part, denied in part.

Plaintiff admits that Mr. Zurfluh issued a redescription of Plaintiff's Personnel Assistant position. Plaintiff also admits that the redescription contains the language as stated by Defendant.

6

Plaintiff denies that this redescription bears any relation to the e-Qip program. Defendant's Exhibit 8 makes no reference to the e-Qip program.

9.     The cover page of this 2006 job redescription stated: "Purpose of redescription is to clarify duties through deletion of some and addition of others.  Responsibility for background investigation process removed."  (Ex. 8, p. 1.)  Zurfluh testified that the last sentence of this explanation meant that he had removed only the handling of the hard-copy SF 85 from the job description, and that Martinez remained responsible for submitting other materials relating to background checks, including fingerprinting materials, to OPM.  (Ex. 5, pp. 73-74.)  Zurfluh states in his affidavit: "[S]uitability adjudications and background investigations  for new employees were for Laura Martinez at all times essential functions and primary responsibilities of her job.  With the introduction of e-Qip, the electronic functions consumed some 20-25 percent of her working day." (Ex. 6, par. 11).

**Plaintiff's Response:**  Admitted.

10.     When OPM adopted e-Qip, three separate functions relating to e-Qip were assigned to employees of the VASHNS HR department.  These functions were: initiator (the person who initially entered the information in the computer), reviewer (the person who reviewed the work performed by the initiator), and approver (the person who approved the work performed by the initiator and reviewer).  (Ex. 5, pp. 44, 61.)  At a meeting of HR employees with Zurfluh, Martinez was assigned the initiator function, Human Resources Assistant Kelly Wright was assigned as the reviewer, and the assigned approver was HR employee Claudia Pugh.  (Id.; Ex. 24, p. 39.).

**Plaintiff's Response:**  Admitted.

11.     In order to perform her assigned duties as e-Qip initiator, Martinez was required to first register with the e-Qip system on an internet portal.  (Ex. 5, pp. 44, 72-73.) Registering with e-Qip was about equal in difficulty with using e-mail, which Martinez had been doing for years.  (Ex. 5, pp.  44 (Kelly Wright: "Basically, it's filling out your name, your email address,

what your title is. And that's it."); 72-73 (Don Zurfluh: "Signing in to the Portal . . . it's like email. It's like setting up a username and password, for example.  And once you get in, you – you follow the prompts on – on signing in.  And, I mean, it's simple enough that I could use it or anybody could use it, quite frankly. So it's not a difficult process.").

**Plaintiff's Response:**  Admitted in part, denied in part.

Plaintiff admits Defendant's assertion that Plaintiff was required to first register with the e-Qip system on an internet portal.

Plaintiff denies Defendant's assertion that "[r]egistering with e-Qip was about equal in difficulty with using e-mail." Defendant predicates this particular assertion on Mr. Zurfluh's and Ms. Wright's subjective perceptions of the difficulty of registering with e-Qip, which are not indicative of Plaintiff's own perception of the difficulty of performing this task. Plaintiff stated that she found registering for e-Qip to be too difficult and stressful given the instruction she had received. Plaintiff's Ex. 1, p. 108, 114, 119.

12.    Martinez's supervisor, Zurfluh, ordered Martinez to register to use e-Qip, on July 26, August 7, August 17, September 7, and September 20, 2006, but Martinez failed to register for e-Qip.  (Ex. 10, p. 2.)  Kelly Wright attempted about twice a week over a period of several months to assist Martinez to perform this registration, but Martinez made repeated excuses and avoided performing the registration.  (Ex. 5, pp. 43-46.)

**Plaintiff's Response:** Admitted in part, denied in part.

Plaintiff admits Defendant's assertions that Mr. Zurfluh ordered Plaintiff to register for e-Qip on July 26, August 7, August 17, September 7, and September 20, 2006, and that Plaintiff was unable to register for the program.

Plaintiff denies the assertion that "Kelly Wright attempted about twice a week over a period of several months to assist Martinez to perform this registration." In the cited portion of Defendant's Exhibit 5, Ms. Wright responded to the question of how many times she attempted to assist Plaintiff with registering for e-Qip by testifying, "I won't say it was on a daily basis. It would maybe be two—maybe two week—two times a week or a week would go by and we'd try

to do it again. I don't know the number, though—the number of times, I don't." Defendant's Ex. 5, p. 46.

Plaintiff also denies Defendant's contention that Plaintiff "avoided performing the registration." Ms. Wright testified that Plaintiff attempted to register for e-Qip on at least one occasion, only to discover that the registration attempt "didn't take." *See* Defendant's Exhibit 5, p. 45. Furthermore, Plaintiff testified that she unsuccessfully attempted to complete the registration on multiple occasions. Plaintiff's Ex. 1, p. 104.

13.    Based on Martinez's repeated failures to comply with the order to register for e-Qip, and other infractions of VA rules, Zurfluh disciplined Martinez with a fourteen-day suspension in October 2006.  (Ex. 10, p. 1.)  Martinez served the suspension, but she continued thereafter to fail to register for e-Qip.  (Ex. 5, pp. 74-75.)

**Plaintiff's Response:** Admitted.

14.    Because of Martinez's failure to register for e-Qip, Kelly Wright was required by necessity to take on the duties of e-Qip initiator that had been assigned to Martinez, in addition to Wright's substantial other duties, including her duties as e-Qip reviewer.  (Ex. 5, p. 46.)

**Plaintiff's Response:** Admitted in part, denied in part.

Plaintiff admits Defendant's assertions that Ms. Wright performed the e-Qip initiator duties following Plaintiff's inability to register to for e-Qip.

Plaintiff denies Defendant's assertion that Ms. Wright's other duties were "substantial." Insofar as Ms. Wright did not use this adjective to describe her duties in the excerpt of her Merit Systems Protection Board testimony contained in Defendant's Exhibit 5, this characterization represents counsel's personal opinion rather than a statement of fact.

15.    Zurfluh again ordered Martinez to register for e-Qip on November 14, November 28, and December 12, 2006, and January 9, 2007.  (Ex. 11, p. 2.)  Once again, Martinez failed every time to comply with these orders, instead giving Zurfluh various excuses. (Ex. 5, pp. 75, 81.)

**Plaintiff's Response:**  Admitted in part, denied in part.

Plaintiff admits that she did not register for e-Qip during the time period specified.

Plaintiff denies this assertion to the extent that it indicates a conscious refusal to complete the registration process. On the contrary, Plaintiff attempted to register for e-Qip, but found it too difficult and stress-inducing given the type of training she had received. Plaintiff's Ex. 1, pp. 104, 114, 119.

16.    Zurfluh disciplined Martinez for these additional failures to follow direct orders by imposing another 14-day suspension, which Martinez served in March 2007.  (Ex. 11, p.1.) Yet, despite this second round of progressive discipline, Martinez continued her refusal to register for e-Qip.  (Ex. 5, p. 75.)

**Plaintiff's Response:** Admitted in part, denied in part.

Plaintiff admits Defendant's assertions that Mr. Zurfluh issued Plaintiff a second fourteen-day suspension, which she served in or around March 2007.

Plaintiff denies Defendant's assertion that Plaintiff's failure to register for e-Qip constituted a "refusal" to do so. On the contrary, Plaintiff did not complete the e-Qip registration because she was unable to do so, despite multiple attempts. Plaintiff's Ex. 1, p. 104, 114.

17.    Zurfluh again ordered Martinez to register for e-Qip by e-mail dated April 2, 2007. (Ex. 12): "Laura, you are directed to register in the e-Qip portal by close of business today. Provide me proof of registration.")

**Plaintiff's Response:** Admitted.

18.    Martinez did not register for e-Qip by the close of business on April 2, 2007, or at any time thereafter.  (Ex.13.)   Instead, two weeks later, on April 16, 2007, she sent a typed memorandum to Zurfluh, in which she asked to be relieved of her e-Qip duties altogether. No medical information or doctor's letter accompanied the memorandum. (Ex. 14.)  Although the memorandum offered several reasons why Martinez believed she should be relieved of e-Qip duties, none related to her CAPD condition.  The memorandum stated, in its entirety:

On the recommendation of Ms. Fischer, I am requesting reasonable accommodations based on my disability.  I am asking that I not be required to do the e-Qip program because to this point, I find it is too difficult to do.  My duties have me working at my capacity and by adding the e-Qip program to my duties has caused me extreme stress and mental anguish.  Because I am situated at the front desk and cannot provide proper security from prying eyes, this isn't the appropriate place for dealing with sensitive information.

Since you have people working this program as their primary duties, working in the back in a secure area, and the fact that this additional duty came as a result of me asking to join the Union (after I had already received my union membership card), I consider this collateral duty.

This challenge has already cost me 14 days of lost pay because I can't even register into the program by myself.  I am exempt from doing sensitive duties because I am under a non-sensitive, non-competitive Schedule A position.  I am therefore asking for reasonable accommodations be granted to avoid any more stress to me.

(Ex. 14).

**Plaintiff's Response:** Admitted in part, denied in part.

Plaintiff admits Defendant's assertions that Plaintiff did not register for e-Qip on April 2, 2007, or at any time thereafter. Plaintiff also admits that she requested to be relieved of registering for e-Qip by memorandum, dated April 16, 2007, and did not submit medical documentation along with this memorandum. Plaintiff admits that Defendant's reproduction of the contents of that memorandum is accurate.

Plaintiff denies Defendant's assertions that Plaintiff's request did not relate to her CAPD. Plaintiff explicitly stated in her memorandum that her accommodation request related to her disabilities. *See* Defendant's Ex. 14. In addition, she testified that she frequently required visual instruction to perform unfamiliar tasks at work, and due to the lack of proper guidance on registering for e-Qip, she was unable to complete the assignment. Plaintiff's Ex. 1, pp. 61-62, 114, 119.

19.    Zurfluh treated this memorandum as a request for accommodation by Martinez. (Ex. 5, pp. 80, 91.)  Following VASNHS procedure, Zurfluh submitted the memorandum to the Occupational Health Physician at VASNHS, Dr. Martin Mathiesen, for a determination of whether Martinez was medically eligible for an accommodation.  (Ex. 5, p. 92.)  Knowing that Martinez had been able to perform all her job duties, including handling the hard-copy SF 85s,

competently for the last ten years, Zurfluh did not know of any reason why Martinez would need an accommodation regarding her duties as e-Qip initiator.  (Ex. 5, p. 91.)

**Plaintiff's Response:** Admitted in part, denied in part.

Plaintiff admits Defendant's assertions that Mr. Zurfluh treated Plaintiff's memorandum of a request for reasonable accommodation, and that Mr. Zurfluh forwarded this memorandum to Dr. Mathiesen.

Plaintiff denies Defendant's assertion that "Zurfluh did not know of any reason why Martinez would need an accommodation regarding her duties as e-Qip initiator." Mr. Zurfluh testified during his deposition that he was aware that Plaintiff suffered from CAPD, and that he understood this condition to impair Plaintiff's ability to comprehend certain modes of communication. Mr. Zurfluh further testified that he recalled at least one occasion in which Plaintiff requested specialized training on the registration process due to her comprehension difficulties. Plaintiff's Ex. 2, pp. 8, 80.


20.     On May 1, 2007, Zurfluh sent Martinez an e-mail in which Zurfluh stated: "Ms. Martinez, your request for reasonable accommodation has been reviewed by the Occupational Health Physician.  He is unable to make a determination if your request qualifies for review for reasonable accommodation due to the absence of definitive medical documentation.  At your earliest convenience, you must provide substantive medical documentation to support your request for reasonable accommodation."  (Ex. 15.)

**Plaintiff's Response:** Admitted.


21.     Martinez responded to this e-mail with an e-mail indicating that she believed this e-mail related to a request she had made, at about the same time, to be temporarily relieved of fingerprinting duties due to a hand injury.  (Ex. 15.)  Zurfluh responded the same day with a clarifying e-mail, stating that his request for medical information related to her April 16, 2007 memorandum request, which "lacks sufficient, substantive medical documentation as confirmed upon review by the Occupational Health Physician."  (Id.)  Dr. Mathiesen also responded with clarifying e-mails, informing Martinez that: "As the Occupational Health Physician I need all

information to make my recommendation to the Reasonable Accommodation Committee." (Ex. 16.)

**Plaintiff's Response:** Admitted.

22.     Martinez never responded to these clarifying e-mails and never provided any medical information to support her request to be relieved of e-Qip duties. (Ex. 5, pp. 80-81; Ex. 9, p. 125 (Martinez is asked whether she ever submitted any additional information or documentation in response to Zurfluh's and Mathiesen's requests, and she answers, "No.").) She thereby abandoned the interactive process on her accommodation request.  On May 24, 2007, Zurfluh handed Martinez a memorandum stating that because she had not provided the necessary medical information, no further action would be taken on her request for accommodation.  (Ex. 6, p. 7.)

**Plaintiff's Response:** Admitted in part, denied in part.

Plaintiff admits that she did not provide medical documentation in response to management's requests for the same. Plaintiff also admits Defendant's assertion with respect to the May 24, 2007, memorandum issued by Mr. Zurfluh.

Plaintiff denies Defendant's statement that she "abandoned the interactive process on her accommodation request." This assertion constitutes a legal conclusion, not a statement of fact. Plaintiff's counter-argument with respect to this legal conclusion is contained *infra*.

23.     Based on Martinez's repeated failures to register for e-Qip, along with other infractions such as misplacing job applications, Zurfluh issued a Notice of Proposed Removal to Martinez on May 21, 2007.  (Ex. 17.)

**Plaintiff's Response:** Admitted.

24.     Martinez responded to the Notice of Proposed Removal with a three-page letter sent by her attorneys.  (Ex. 3.)  No additional medical information to support Martinez's claimed need for accommodation was either discussed in or attached to this letter.

**Plaintiff's Response:** Admitted.

25.     On June 27, 2007, John Bright, the Director of VASNHS, sent Martinez a letter informing her that she was terminated, based on the grounds stated in Zurfluh's Notice of Proposed Removal.  (Ex. 18.)

**Plaintiff's Response:** Admitted.

26.     Martinez filed a Complaint of Employment Discrimination with the VA on August 22, 2007.  (Ex. 19.)  The VA Office of Employment Discrimination issued a Final Agency Decision denying this complaint on April 15, 2008, which found that Martinez had failed to sustain her burden of persuasion.  (Ex. 20.)  Martinez took a "mixed-case" appeal of this decision to the Merit Systems Protection Board (MSPB).  Administrative Judge Kang held an evidentiary hearing on this appeal on September 12, 2008.  (Ex. 5, p.1.)  AJ Kang issued his Initial Decision on December 22, 2008, affirming the Final Agency Decision, stating that "the deciding official considered relevant factors and exercised his discretion within tolerable limits of reasonableness."  (Ex. 21.)  Martinez appealed this Initial Decision to the full MSPB, which affirmed the Initial Decision in a Final Order on March 26, 2009.  (Ex. 22.)  Martinez appealed this Final Order to the Equal Employment Opportunity Commission Office of Federal Operations (OFO), which affirmed the MSPB's Final Order on June 24, 2009. (Ex. 23.) The OFO's order stated, in relevant part: "In addition we note that petitioner does not dispute that she did not comply with the agency's request for additional information" regarding her request for accommodation.  (Ex. 23, pp. 3-4.)  Martinez then timely filed this lawsuit on July 27, 2009. (#1.)

**Plaintiff's Response:** Admitted.

27.     Martinez's original Complaint raised three claims: Claim I: Violation of the Rehabilitation Act by failing to accommodate her disability in 2006 and 2007; Claim II: Retaliation under the Rehabilitation Act; and Claim III: Violation of the Civil Service Reform Act.  (Id.)  The Court dismissed Claim III in an order dated July 26, 2010.  (#29.)  In a subsequent order dated January 3, 2011, the Court also dismissed that portion of Claim I that was

14

based on an alleged failure to accommodate in 2006. (#42.) Martinez then filed an Amended Complaint. (#44.) The only remaining claims in the Amended Complaint are Claim I: Failure to accommodate her disability in 2007 under the Rehabilitation Act; and Claim II: Retaliation under the Rehabilitation Act. (Id.)

**Plaintiff's Response:** Admitted.

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Summary Judgment Standard

The Federal Rules of Civil Procedure provide that a party is entitled to summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the suit under the governing, substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Celotex Corp.*, 477 U.S. at 322-23 (1986).

To defeat a motion for summary judgment, the opposing party must establish the existence of a genuine issue of fact with respect to the essential elements of its case. *Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 323. To meet this burden, the non-moving party must come forward with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party may present any of the types of evidence described in Rule 56(c) of the Federal Rules of Civil Procedure to present a proper challenge to the motion. *Celotex Corp.*, 477 U.S. at 324.

When faced with a motion for summary judgment and a response in opposition, the judge's function is not to weigh the evidence and determine the truth of the matter, but rather, to

15

determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In evaluating the evidence to determine whether there is a genuine issue of fact, the court must draw all inferences supported by the evidence in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Guidroz–Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

As the following will demonstrate, Plaintiff can establish the existence of genuine issues of material fact with respect to each essential element of her claims challenged by Defendant. Accordingly, Defendant's request for summary judgment on her two claims should be denied.

**B.    Summary Judgment Is Not Appropriate For Plaintiff's Failure to Accommodate Claim.**

1.    Substantive Legal Standard.

Plaintiff's first claim alleges that Defendant violated the Rehabilitation Act of 1973 by failing to provide her with a workplace accommodation relating to her disability. Sections 501 and 505 of the Rehabilitation Act collectively prohibit discrimination against individuals with known physical or mental disabilities by employing agencies of the federal government. *See* 29 U.S.C. §§ 791, 794a (1998). The rights and obligations created by the Rehabilitation Act mirror those prescribed under the Americans with Disabilities Act (hereinafter "ADA"). *See* 29 U.S.C. § 791(g); 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA claims]."); *Bragdon v. Abbott,* 524 U.S. 624, 632 (1998); *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

The ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" within its definition of actionable discrimination. 42 U.S.C.A. § 12112(b)(5)(A). To establish a *prima facie* case under a failure to accommodate theory, the plaintiff must demonstrate (1) she is disabled; (2) she is qualified; and (3) a reasonable accommodation is facially possible. *See Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993). Once the plaintiff makes out a *prima facie* case, the employer may escape liability only by showing that the requested accommodation would have imposed an undue hardship on the operation of its program. *See* 42 U.S.C.A. § 12112(b)(5)(A).

16

In its Motion for Summary Judgment, Defendant concedes that Plaintiff has raised a genuine issue of fact with respect to the question of whether she is an individual with a disability. Additionally, Defendant does not contest that it denied the accommodation requested by Plaintiff. Instead, Defendant contends that Plaintiff cannot establish genuine issues regarding the second and third prongs of her *prima facie* case, namely, that she is qualified for her position and that her requested accommodation was "reasonable." Defendant also argues that Plaintiff is responsible for a breakdown in the interactive process. For the foregoing reasons, this Court should reject each of Defendant's arguments.

2.     Genuine Issues of Material Fact Exist Regarding Whether Plaintiff's Requested Accommodation Was Reasonable.

In seeking to recover under a failure to accommodate theory of liability, the plaintiff bears the initial burden of showing the existence of a reasonable accommodation. *Zukle*, 166 F.3d at 1046 (9th Cir. 1999) (citation and quotation omitted). The ADA defines "reasonable accommodations" to include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). To avoid summary judgment on the question of the reasonableness of the requested accommodation, the plaintiff "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002).

Defendant maintains that it is entitled to summary judgment on Count I of the Amended Complaint because the accommodation requested by Plaintiff was not reasonable. Defendant relies on the notion that an accommodation is *per se* unreasonable if it would relieve an employee of one of the essential duties of his or her position. Following from this premise, Defendant contends that performance of e-Qip duties represented an essential function of Plaintiff's position, and thus, by asking management to exempt her from such duties, Plaintiff sought an unreasonable accommodation. Defendant does not argue that Plaintiff requested an

17

accommodation that would have worked an undue hardship on the operation of the Agency's business.

Defendant correctly notes that an employer need not strip a position of its principal duties in order to accommodate an employee's disabling condition. *See*, EEOC Interpretive Guidance, Appendix to 29 C.F.R. Part 1630 (providing interpretive guidance for 29 C.F.R. 1630.2(o)); *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). However, reference to this principle, alone, does not demonstrate that the accommodation sought by Plaintiff in this case was *per se* unreasonable.

First, there exists a genuine issue with respect to whether performance of e-Qip duties represented an essential function of Plaintiff's former position. The 2006 Position Description for Plaintiff's former Human Resources Assistant position merely provides, in relevant part, that Plaintiff was responsible for "electronic fingerprinting and related duties associated with all levels of background investigations. As requested, prepares necessary forms for the conduct of National Agency Check/Investigation to determine suitability of employees hired at VASNHS." Defendant's Exhibit 8. Moreover, with respect to the requisite aptitude for operating a computer, the "Knowledge Required By the Position" portion of the Position Description states only that, "Skill of a fully qualified typist is required to operate a word processing computer with Word for Windows." *Id.* Notwithstanding Mr. Zurfluh's self-serving contention that utilization of the e-Qip program represented an essential function of the Human Resources Assistant position, relevant portions of the Position Description do not support his testimony. What is more, Plaintiff successfully performed each of the core duties and responsibilities of her job without an accommodation for over five (5) years prior to the implementation of the e-Qip program.

Furthermore, while an employer is not required to exempt an employee from his or her core duties, an employer is nonetheless obligated to pursue alternative workplace modifications that would allow the employee to perform the essential functions of the position. *See Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128, 1137-39 (9th Cir. 2001). The ADA specifies that such modifications include "job restructuring," "reassignment to a vacant position," and "training materials or policies." 42 U.S.C. § 12111(9)(B). Similarly, interpretive regulations state, "An

employer or other covered entity may also restructure a job by altering when and/or how an essential function is performed." *See*, EEOC Interpretive Guidance, 29 C.F.R. 1630 app. § 1630.2(o). This regulatory section provides the following illustrative example: "an employee with a disability that inhibits the ability to write, may be permitted to computerize records that were customarily maintained manually." *Id.* The regulations establish that where restructuring or other modifications to the position in question would result in an undue hardship, the employer should consider reassignment to a vacant position.

In her April 16, 2007, request for reasonable accommodation, Plaintiff requested the following: "I am asking that I not be required to do the e-Qip program because to this point, I find it is too difficult to do." *See* Defendant's Exhibit 14. This request illustrates that Plaintiff sought only to be relieved of the responsibility of using the e-Qip program due to the impediments caused by her disabling condition. At no point did she request exemption from the objective for which the e-Qip system was designed, namely, to compile information necessary to perform background checks. *See* Defendant's Exhibit 5, pp. 71-72. Indeed, Plaintiff had successfully performed this task for over five (5) years using pre-e-Qip protocol. *See* Defendant's Exhibit 5, p. 73. Likewise, Plaintiff did not ask management to relieve her of any of her other duties and responsibilities as a Personnel Assistant.

Defendant's Motion for Summary Judgment fails to account for the possibility that alternative workplace modifications existed that would have ameliorated the difficulties that prompted Plaintiff to make the accommodation request at issue. As will be discussed in greater detail below, Defendant utterly failed in its obligation to engage in a good faith dialogue with Plaintiff to determine potential accommodations that would have allowed Plaintiff to perform her job satisfactorily. Rather, management responded to Plaintiff's request merely by asking for medical documentation, despite the fact that Plaintiff's first-line supervisor knew of Plaintiff's disabling condition. *See* Defendant's Exhibit 5, p. 118.

Defendant's failure to participate in the interactive process precluded discussions with Plaintiff regarding possible workplace modifications that would have allowed her to perform all the essential functions of her position. Potential accommodations included providing Plaintiff

with training specifically tailored to overcoming the practical obstacles caused by her CAPD, restructuring the e-Qip initiator functions to allow Plaintiff to use the hard-copy SF-85s, or assigning her to a new position. To the extent that such modifications are of the sort expressly contemplated by the ADA and implementing regulations, they are reasonable in the run of cases. Furthermore, the record is devoid of evidence demonstrating why such modifications would have been beyond Defendant's capabilities.

While Defendant attempted to assist Plaintiff by having Ms. Kelly Wright guide her through the e-Qip registration process, Plaintiff still could not successfully register for the program. *See* Plaintiff's Ex. 1, p. 104. An employer's obligation to provide a reasonable accommodation entails the obligation to ensure that the accommodation provided is effective. *See* 29 C.F.R. § 1630.2(o)(1)(ii) (defining "reasonable accommodation" to include workplace modifications or adjustments "that *enable* a qualified individual with a disability to perform the essential functions of that position" (emphasis added)); *Barnett*, 535 U.S. at 399-401. To the extent they were inadequate to allow Plaintiff to register for the e-Qip program, Ms. Wright's ostensible efforts did not absolve Defendant of responsibility for providing an effective accommodation.

### 3.    Genuine Issues of Material Fact Exist Regarding Whether Plaintiff Was Qualified For Her Position.

Defendant next argues that it had no obligation to accommodate Plaintiff because the workplace modification that she requested would have relieved her of an essential function of her position. As a result, Defendant reasons, the accommodation sought by Plaintiff would not have rendered her "qualified" for her position.

Defendant's argument is indistinguishable from its assertions concerning the reasonableness of Plaintiff's accommodation request. Accordingly, Plaintiff responds in kind. As explained above, there is a genuine issue of fact with regard to whether use of the e-Qip program for completion of background checks was an essential function of the position. In addition, there exists a genuine issue of triable fact with respect to whether Defendant fulfilled its obligation to consider the full range of workplace modifications—including, but not limited to, providing

more effective training to Plaintiff on registering for e-Qip, allowing Plaintiff to perform background checks without using e-Qip, or reassigning Plaintiff to a vacant position—that would have accommodated her impairment. To the extent that the record evidence proffered by Defendant cannot adequately account for these issues, summary judgment on this Count is improper.

### 4.   Defendant Wrongfully Denied The Requested Accommodation.

Defendant maintains that even if Plaintiff's requested accommodation was reasonable, it is not liable for failing to provide this accommodation because Plaintiff caused a breakdown in the interactive process. This particular argument proceeds on the basis of the assertion that Plaintiff failed to respond to management's requests for medical documentation to support the accommodation request. By failing to furnish such information, Defendant concludes, Plaintiff abandoned the interactive process. The Court should not countenance this argument as it misstates the law applicable to this issue.

Following receipt of an employee's request for accommodation, an employer must in good faith engage in an interactive process with the employee to determine if a reasonable accommodation is available. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated on other grounds*, 535 U.S. 391 (2002); *Lucke v. Multnomah Cty.*, 365 Fed. App'x. 793, 794 (9th Cir. 2010). In *Barnett*, the Ninth Circuit Court of Appeals held, "[E]mployers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Id.* The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. *Barnett*, 228 F.3d at 1114-15. Where there is a genuine dispute of material fact as to whether the employer properly engaged in the interactive process, summary judgment will seldom be appropriate because it is extremely difficult to prove that no reasonable accommodation would have been available. *Morton v. United Parcel Service, Inc.*, 272 F.3d 1249, 1256 n. 7 (9th Cir. 2001), *overruled on other grounds by Bates v. United Parcel Service*, Inc., 511 F.3d 974 (9th Cir. 2007) (en banc).

21

The duty to accommodate "is a 'continuing' duty that is 'not exhausted by one effort.'" *McAlindin v. City of San Diego,* 192 F.3d 1226, 1232 (9th Cir.), *amended* 201 F.3d 1211, and *cert. denied,* 530 U.S. 1243 (2000).  The EEOC Enforcement Guidance notes that "an employer must consider each request for reasonable accommodation," and "[i]f a reasonable accommodation turns out to be ineffective and the employee with a disability remains unable to perform an essential function, the employer must consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship."   EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, EEO Compliance Manual (CCH), § 902, No. 915.002 (March 1, 1999), at 7625. The Ninth Circuit Court of Appeals clarified this notion in *Humphrey v. Memorial Hospitals Association:*

> [T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work, and by avoiding the creation of a perverse incentive for employees to request the most drastic and burdensome accommodation possible out of fear that a lesser accommodation might be ineffective.

239 F.3d 1128, 1138 (9th Cir. 2001).

An employer fails to engage in the interactive process when it provides written denial of an employee's accommodation request without proposing alternatives. *Id.* at 1139 (citing *Barnett,* 228 F.3d at 1116-17). In addition, an employer cannot refuse to participate in the interactive process based on its own assessment that no accommodation would have allowed the employee to perform the essential functions of his or her position. *Timmons v. United Parcel Service, Inc.*, 310 Fed. App'x. 973, 975 (9th Cir. 2009) (citation omitted). In *Timmons*, the Ninth Circuit reversed the grant of summary judgment to the employer, which had refused to engage in the interactive process because it believed that no accommodation would have allowed the plaintiff to perform the essential functions of his position. *Id.* The Court reasoned that summary

22

judgment was improper where the defendant did not prove the unavailability of a reasonable accommodation because it did not explore the possibility of reassignment. *Id.*

The record in this case reflects an utter failure on the part of Defendant to participate in the interactive process. Defendant has presented no evidence in its Motion for Summary Judgment that it engaged in any form of dialogue with Plaintiff to determine the existence of a workplace accommodation. At most, upon learning of the problems Plaintiff was having, Defendant attempted to assist Plaintiff in registering for e-Qip by directing Ms. Kelly Wright give her one-on-one instruction. Ms. Wright's tutelage, however, was inadequate to overcome the difficulty Plaintiff faced in attempting to register in the system. Upon learning that Plaintiff still could not operate the program, Defendant had a legal obligation to pursue discussions with Plaintiff to determine whether it could feasibly provide an alternative accommodation. *See Humphrey*, 239 F.3d at 1138 (holding that the employer violated its duty with respect to the interactive process by failing to initiate additional discussions with plaintiff after initial attempts to accommodate him failed). Instead, Defendant simply requested medical documentation and continued to pressure Plaintiff to register for e-Qip. Ultimately, Plaintiff's inability to register for the program precipitated her termination.

Despite Defendant's arguments to the contrary, Plaintiff's failure to provide medical documentation did not constitute a breakdown of the interactive process. Where an employer requests medical documentation in response to an employee's accommodation request, the employee's failure to provide such documentation does not relieve the employer from responsibility to continue efforts to find a suitable accommodation for the employee. *See Allen v. Pacific Bell*, 348 F.3d 1113, 1115 (9th Cir. 2003) (stating that the employer had a duty to consider the full range of potential accommodations despite the employee's failure to provide medical documentation requested by the employer).

As the foregoing makes clear, Defendant has not met its burden in proving the absence of genuine issue of material fact with respect to Count I of Plaintiff's Amended Complaint.

**C.    Summary Judgment Is Not Appropriate For Plaintiff's Claims of Reprisal.**

    1.    <u>Substantive Legal Standard.</u>

Plaintiff's second remaining claim alleges that Defendant retaliated against her in violation of the Rehabilitation Act when it removed her from service following her request for reasonable accommodation. To make out a *prima facie* case of retaliation, an employee must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Once the plaintiff establishes a *prima facie* case, the employer has the burden to advance legitimate, nondiscriminatory reasons for the adverse employment action. *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000). If the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason presented by the employer was pretext in order to proceed beyond the summary judgment stage. *Id.*

In its Motion, Defendant concedes that Plaintiff has established that she engaged in protected activity by making an accommodation request on or about April 16, 2007. Defendant also does not dispute that Plaintiff suffered an adverse employment action when she was terminated. Defendant's Motion for Summary Judgment on this Count is based on the argument that Plaintiff has failed to present a genuine issue of material fact with respect to demonstrating a causal nexus between her protected activity and the termination. Additionally, Defendant maintains that even if Plaintiff can meet her *prima facie* burden, she nonetheless has failed to make a sufficient showing that Defendant's stated reason for the removal was pretext for a retaliatory motivation.

    2.    <u>Genuine Issues of Material Fact Exist Regarding The Intent Element of Plaintiff's</u>
<u>Reprisal Claim.</u>

Defendant first argues that Plaintiff has failed to present a genuine issue of material fact with respect to demonstrating a causal link between her protected activity and her removal from service in or around May 2007. Temporal proximity between protected activity and an adverse employment action may be sufficient to establish retaliatory intent. *See Pardi v. Kaiser*

24

*Foundation Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004); *see also, Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding sufficient evidence of causation existed where adverse actions occurred less than three months after protected activity).

The undisputed facts are sufficient to satisfy Plaintiff's *prima facie* burden for this claim. To reiterate, Defendant concedes that Plaintiff engaged in protected activity by submitting a request for reasonable accommodation to her first-line supervisor on or about April 16, 2007. Defendant also admits that Plaintiff's removal from service on or about June 27, 2007 constituted a sufficiently adverse act to satisfy the second prong of the applicable test. In addition, the temporal proximity between these events suffices for the intent element of Plaintiff's *prima facie* case. In accord with cases such as *Yartzoff*, the two months and eleven days between management's receipt of Plaintiff's request for reasonable accommodation, and the subsequent effectuation of her proposed removal from service is close enough in time to give rise to the inference of retaliatory intent. The inference is even stronger to the extent that the May 21, 2007, Notice of Proposed Removal constitutes an adverse action. Accordingly, Plaintiff has established a genuine issue with respect to all elements of her *prima facie* case.

3.      <u>The Non-discriminatory Rationale Proffered By Defendant Is Without Merit.</u>

Defendant next asserts that even if Plaintiff can establish a *prima facie* case of retaliation, Plaintiff nonetheless cannot rebut Defendant's proffered, non-discriminatory rationale for the termination, to wit, for failing to obey management's orders to register for e-Qip. If the employer rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation. *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). Pretext may be shown either (1) through direct evidence of retaliatory intent, or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence. *See Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). Normally, a plaintiff demonstrates pretext indirectly by showing both close temporal proximity between the adverse act and the protected activity, and awareness of the protected activity management. *See* EEOC Compl. Man. (BNA), 8-IIE, ¶ 2 (May 20, 1998).

25

The undisputed facts in this case present a genuine issue of material fact regarding the question of whether Defendant's ostensibly non-retaliatory basis for Plaintiff's termination was pretextual. Plaintiff has established management's knowledge of her reasonable accommodation request, as well as the close temporal proximity between the protected activity and the initiation of the termination procedure. Pursuant to the guidelines set forth in the EEOC's Compliance Manual, such proof clearly establishes the existence of genuine issues of material fact on the question of pretext undeserving of summary adjudication.

Moreover, Defendant's stated reason for the termination is practically indistinguishable from the intended impact of Plaintiff's protected activity. In other words, Plaintiff requested that management accommodate her by relieving her of the responsibility of using the e-Qip program. Fewer than two months after making this request, management commenced her removal on the stated basis of her failure to register for e-Qip. Coupled with the evidence discussed above, that Defendant removed Plaintiff for the precise workplace modification that she sought in her accommodation request is sufficient to defeat summary judgment on this issue.

4.    Defendant Misstates The Law Concerning Damages Available For Retaliation Claims Brought Under the Rehabilitation Act.

Lastly, Defendant contends that even assuming Plaintiff can establish genuine issues of fact on this Count, partial summary judgment is appropriate due to statutory limitations on recovery for retaliation claims brought under the Rehabilitation Act. Specifically, Defendant argues that a plaintiff who asserts a Rehabilitation Act retaliation claim may only receive equitable relief, and may not collect compensatory or punitive damages. Since Plaintiff is limited to equitable relief, Defendant asserts, she has no right to a jury trial on Count III of the Amended Complaint. Defendant's argument misstates the law.

The United States Supreme Court has expressly stated that a plaintiff who brings a retaliation claim under § 504 of the Rehabilitation Act may recover compensatory damages. *See Barnes v. Gorman*, 536 U.S. 181, 185-87 (2002) (holding that compensatory damages are available against public entities pursuant to Title VI of the Civil Rights Act of 1964). Defendant is correct in noting that punitive relief is not available under a Rehabilitation Act retaliation claim. *Id.* at 188. Nevertheless, *Barnes* demonstrates that Defendant's assertion regarding the

26

scope of Plaintiff's potential recovery for Count III of her Amended Complaint is erroneous, thus inadequate to disturb Plaintiff's request for a jury trial.

The cases cited by Defendant in support of its argument do not stand for the proposition advanced in Defendant's Motion. *Alvarado v. Cajun Operating Company* is distinguishable from this case in that it involved a suit against a private company. 588 F.3d 1261, 1263 (9th Cir. 2009). This distinction is critical to this issue, since *Barnes* held that remedies available under 42 U.S.C. § 12133, the statutory provision affording remedies available against public entities, include monetary damages. 536 U.S. at 185; *see also*, *Herrera v. Giampietro*, 2010 WL 1904827 at *9 (E.D. Cal. May 10, 2010) (recognizing that *Barnes* does not allow for monetary damages against a private entity under a Rehabilitation Act retaliation claim). While *McCoy v. Department of the Army* held that compensatory damages are not available under a ADA retaliation claim, this case acknowledged that its holding was directly contrary to established Ninth Circuit precedent. 2011 WL 2160934 at *10-11 (E.D. Cal. June 1, 2011). Furthermore, the *McCoy* court inappropriately relied on *Alvarado* in support of its holding, ignoring the public-private distinction recognized in *Barnes*. *Id.* at 11. Accordingly, Defendant's argument regarding the scope of available relief for Count III of Plaintiff's Amended Complaint is without merit, and should be rejected by this Court.

III.     CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that the Court

**DENY** Defendant's Motion for Summary Judgment in full.

Respectfully submitted this 6th day of September, 2011.


By:

**MELVILLE JOHNSON, P.C.**

/s/Walter J. Gabriel
WALTER J. GABRIEL
Louisiana Bar No. 32461
Attorney for Plaintiff
Admitted *Pro hac vice*

JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
DICKINSON WRIGHT PLLC
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128
Telephone:  (702) 541-7888
Facsimile:  (702) 541-7899
Email:  jdlowry@dickinson-wright.com

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on the 6th day of September, 2011, I electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send an electronic mail notification of such filing to the following attorney of record:

> Patrick A. Rose, Esq.
> U.S. Attorney's Office
> 333 Las Vegas Blvd., South
> Suite 5000
> Lloyd George Federal Building
> Las Vegas, NV 89101

> By:

> /s/J.D. Lowry
> JODI DONETTA LOWRY, ESQ.
> Nevada Bar No. 7798
> DICKINSON WRIGHT PLLC
> 7201 West Lake Mead Boulevard, Suite 503
> Las Vegas, Nevada 89128
> Telephone:  (702) 541-7888
> Facsimile:  (702) 541-7899
> Email:  jdlowry@dickinson-wright.com