1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\* \* \***

| | | |
|---|---|---|
| LAURA MARTINEZ, | ) | Case No.: 2:09-cv-01354-RLH-RJJ |
| Plaintiff, | ) | **O R D E R** |
| vs. | ) | (Motion for Summary Judgment–#53) |
| ERIC K. SHINSEKI, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS, | ) | |
| Defendant. | ) | |

Before the Court is Defendant Eric K. Shinseki's **Motion for Summary Judgment** (#53, filed on Aug. 10, 2011). The Court has also considered Plaintiff Laura Martinez's Opposition (#56, filed Sept. 6), and Shinseki's Reply (#57, filed Sept. 13).

**BACKGROUND**

This dispute arises out of Martinez's firing from the Human Resources Department at the Veterans Administration's ("VA") Southern Nevada Health Care System ("VASNHS") in Las Vegas. Martinez suffers from central auditory processing disorder ("CAPD"), a disability. CAPD makes it more difficult to receive or understand information through the spoken word than through visual means such as personal demonstration. (Dkt. #53, Mot. Ex. 9, Martinez Dep. 16-

17.)  In 1997, the VASNHS hired Martinez as a "Schedule A" employee, a position in the Excepted Service reserved for employees with disabilities.  *See* 5 CFR § 213.3102(u)(6).  In 1998, Martinez became a Personal Assistant in the HR Department and, in 2000, she became a "career conditional" appointee in the competitive service thus removing her from the excepted service under Schedule A.  *See id.*  In 2001, Martinez became a "career tenured" employee in the Competitive Service.  Throughout her career with the VASNHS, Martinez's supervisor was Chief of Human Resources Don Zurfluh, who was aware of Martinez's disability.

Martinez's duties as a personal assistant included staffing the HR reception desk, advising applicants for employment about opportunities, posting vacancy announcements on the web, setting up files for open vacancies, placing applications in those files, generating related correspondence, generating and receiving email, beginning the background check process, and related tasks.  (Dkt. #53, Mot. Ex. 7, 2001 Job Description.)  One of Martinez's specific duties was to handle the initial background check paperwork that job candidates had to fill out.  From 2004 through mid-2006 this was the Office of Personnel Management Standard Form 85 (Form 85).  Martinez also fingerprinted the candidates.  (*Id.*)  Martinez performed these duties competently from 2001 through mid-2006 without a formal accommodation.  However, in 2006, the Office of Personnel Management did away with Form 85 and implemented the Electronic Questionnaires for Investigation Processing program, known as e-Qip.  Under this program an online equivalent replaced the paper Form 85.

As part of her job, Zurfluh required Martinez to register online for e-Qip so she could continue fulfilling her duties under a revised job description.  (*Id.*, Ex. 8, Job Description; Ex. 5, U.S. Merit Systems Protection Board Hr'g Mins. 61:11-17.)  Zurfluh instructed Martinez to register for e-Qip five times between July 20 and September 20, 2006, so that she could do e-Qip initiation for job applicants, which she failed to do.  A co-worker, Kelly Wright, attempted to assist Martinez in registering at various times (it is unclear exactly how frequently).  At least once, Wright and Martinez registered Martinez for e-Qip only to later find out that the registration failed

1  (it is unclear why).  In October 2006, Zurfluh disciplined Martinez with a fourteen-day suspension
2  due to her continued failure to successfully register.  As Martinez was not registered with e-Qip,
3  Wright had to fulfill Martinez's e-Qip initiation duties.

4  Between November 14 and January 9, 2007, Zurfluh ordered Martinez to register
5  with e-Qip another four times.  Martinez testified that she found the process too difficult and stress
6  inducing to complete given the level of training she had received, though she had gone through the
7  process at least once.  (Dkt. #56, Ex. 1, 114, 119.)  In March, Zurfluh suspended Martinez a
8  second time for failing to register for e-Qip (also for two weeks).  On April 2, Zurfluh emailed
9  Martinez saying that she was to register by the end of business that day and to provide him proof.
10  She again failed to register.  However, on April 16, Martinez sent a memo to Zurfluh asking to be
11  relieved of all e-Qip duties.  (Dkt. #53, Ex. 14, Memo dated Apr. 16, 2007.)  The memo said that
12  she requested an accommodation based on her disability but did not specify how her CAPD
13  affected her ability to register for e-Qip other than merely claiming that it was too hard.  She also
14  did not provide any medical documentation with the memorandum.

15  Zurfluh treated this memo as a request for an accommodation and submitted the
16  memo to an Occupational Health Physician at VASNHS to determine whether Martinez was
17  eligible for an accommodation.  Zurfluh and the physician, Dr. Martin Mathiesen, then asked
18  Martinez to provide medical documentation so as to make a decision on the accommodation
19  request.  However, Martinez never provided any supporting medical documentation explaining
20  how her CAPD affected her ability to register with e-Qip or fulfill her e-Qip duties.  (*Id.*, Ex. 9,
21  Martinez Dep. 125:3-7.)  On May 24, Zurfluh provided Martinez a memo stating that since she had
22  not provided him any documentation that no further action would be taken on her accommodation
23  request.

24  On May 21, Zurfluh gave a Notice of Proposed Removal based on Martinez's
25  repeated failure to register with e-Qip and certain other infractions.  On June 4, Martinez
26  responded with a letter from her attorneys claiming discrimination and requesting an

1    accommodation, though without providing a suggested accommodation.  (*Id.* Ex. 3.)  On June 27,

2    Martinez was fired.

3            Martinez then proceeded through the administrative process, challenging her firing

4    and claiming that she was discriminated against.  After failing at each level of the administrative

5    process, Martinez filed this lawsuit on July 27, 2009.  Martinez's amended complaint asserts two

6    claims based on her firing: (1) failure to accommodate her disability in 2007 under the

7    Rehabilitation Act; and (2) retaliation under the Rehabilitation Act.  Now before the Court is

8    Defendant's motion for summary judgment on all claims.  For the reasons discussed below, the

9    Court grants Defendant's motion.

**DISCUSSION**

10

11   **I.    Legal Standard**

12           The purpose of summary judgment is to avoid unnecessary trials when there is no

13   dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

14   1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when the pleadings, the discovery

15   and disclosure materials on file, and any affidavits "show there is no genuine issue as to any

16   material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v.*

17   *Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis

18   on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if

19   it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*,

20   477 U.S. 242, 248–49 (1986).  Where reasonable minds could differ on the material facts at issue,

21   however, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441

22   (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  "The amount of evidence necessary to raise a

23   genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing

24   versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983)

25   (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  In evaluating a

26   summary judgment motion, a court views all facts and draws all inferences in the light most

AO 72
(Rev. 8/82)

1   favorable to the nonmoving party.  *Kaiser Cement Corp. v.  Fishbach & Moore, Inc.*, 793 F.2d

2   1100, 1103 (9th Cir. 1986).

3           The moving party bears the burden of showing that there are no genuine issues of

4   material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry

5   its burden of production, the moving party must either produce evidence negating an essential

6   element of the nonmoving party's claim or defense or show that the nonmoving party does not

7   have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

8   *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the

9   moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to

10   "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

11   The nonmoving party "may not rely on denials in the pleadings but must produce specific

12   evidence, through affidavits or admissible discovery material, to show that the dispute exists,"

13   *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply

14   show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285

15   F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of

16   evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

17   **II.**    **Analysis**

18        **A.**    **Discrimination Claim**

19           Under the burden shifting framework applicable to this claim, *see Zukle v. Regents*

20   *of the Univ. of Cal.*, 166 F.3d 1041, 1046-47 (9th Cir. 1999), a plaintiff bears the burden of

21   presenting a *prima facie* showing that she was: (1) an individual with a disability; (2) otherwise

22   qualified for the job; and (3) subjected to discrimination because of her disability through the

23   denial of a requested accommodation, *see Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807,

24   816-17 (9th Cir. 1999)  If the plaintiff satisfies this burden, the burden shifts to the defendant to

25   show: (1) the requested accommodation was not reasonable, or (2) the plaintiff would not be

26

AO 72
(Rev. 8/82)

1   qualified even with the requested accommodation.  *See id*. at 816-17 (applying the standard in an

2   educational setting).

3           For the purpose of this motion, Defendant does not contend that Martinez did not

4   suffer from a disability.  However, Defendant argues that the requested accommodation was not

5   reasonable and that, regardless, the requested accommodation would not have rendered Martinez

6   qualified.

7                   **1.      Reasonableness of Requested Accommodation**

8           After repeated instruction to register for the e-Qip system, various offers of help to

9   do so, and months of failing to do so, Martinez requested relief from her e-Qip duties as an

10  accommodation.  "The ADA [and, thereby, Rehabilitation Act] does not require an employer to

11  exempt an employee from performing essential functions or to reallocate essential functions to

12  other employees."  *Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006).  Defendant argues

13  that under this principle, Martinez's requested accommodation was *per se* unreasonable because

14  she requested to be exempted from what Zurfluh testified was roughly 20-25% of her duties. (Dkt.

15  53, Ex. 6, Zurfluh Decl. ¶ 11.); *see also Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 991

16  (explaining the analysis of whether a particular function is an essential function of a job.)

17                          **i.      Essential Function**

18          In response Martinez merely argues that her job description did not specifically

19  reference the e-Qip program and, thus, there is a fact question as to whether e-Qip duties were an

20  essential function of her job.  (*See id.*, Ex. 8, Job Description.)  This is insufficient to create a

21  question of material fact when a supervisor testifies that this function is essential and would take

22  up 20-25% of Martinez's day and Martinez admits that the prior paper equivalent of the e-Qip

23  program was a significant part of her job.  Thus, the Court finds that the e-Qip duties were an

24  essential part of Martinez's job.

25  /

26  /

AO 72
(Rev. 8/82)

1

### ii.   The Interactive Process and Alternative Accommodations

2       Martinez next argues that even if her e-Qip duties were a core or essential duty, an

3   employer is obligated to pursue alternative accommodations and that VASNHS failed to do so.

4   *See Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128, 1137-39 (9th Cir. 2001).  This is

5   generally true and is part of the interactive process mandated by the ADA and the Rehabilitation

6   Act.  However, it is undisputed that after receiving Martinez's request for an accommodation,

7   VASNHS requested medical documentation from her (on multiple occasions) to be able to

8   determine what accommodations would be possible.  Martinez never provided the requested

9   medical information or otherwise engaged with VASNHS in any type of interactive process to find

10   a suitable accommodation.  Rather, Martinez simply accuses VASNHS of not participating in the

11   interactive process and alleges that specific reasonable accommodations were available.

12       The Court finds that it was Martinez that abandoned the interactive process, not

13   VASNHS.  In the interactive process, "employers must consult and cooperate with disabled

14   employees so that both parties discover the precise limitations and the types of accommodations

15   which would be most effective."  *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115 n.6 (9th Cir.

16   2000).  However, it is not merely the employer's responsibility to communicate and cooperate.

17   "Both sides must communicate directly, *exchange essential information*, and neither side can delay

18   or obstruct the process."  *Id.* at 1114-15 (emphasis added); *Humphrey v. Memorial Hosps. Ass'n*,

19   239 F.3d 1128, 1137 (9th Cir. 2001) ("The interactive process requires communication and good-

20   faith exploration of possible accommodations between employers and individual employees, and

21   neither side can delay or obstruct the process.")  Here, it was not only reasonable for VASNHS to

22   seek medical information from Martinez in order to determine why she could not perform her

23   assigned task, but practically mandated by the interactive process.[1]  While her supervisor knew of

24   _____

25       [1] It is possible that Martinez could have provided other information about how her disability impacted
her ability to register for or otherwise complete her e-Qip tasks rather than providing actual medical information,

26   but she does not present any evidence that she did anything to further the interactive process or explain the need
for an accommodation other than merely stating that e-Qip was too hard for her.

AO 72
(Rev. 8/82)

1    her disability, mere knowledge of a disability does not equate to understanding all of the elements

2    and limitations associated with that disability or how they would impact different tasks.  Here,

3    Zurfluh provided an accommodation even before one was requested by having another employee

4    attempt to help Martinez register.  When that failed, and Martinez requested a specific

5    accommodation, he and a doctor sought out information to further the process.  Thus, Martinez's

6    refusal to provide medical information or initiate some other sort of discussion was an obstruction

7    of the interactive process and shows that she abandoned that process.

8                    **2.       Otherwise Qualified for the Position**

9                    Defendant's arguments here are essentially indistinguishable from his arguments

10   above that Martinez's requested accommodation was unreasonable.  Here, Defendant argues that

11   since Martinez requested to be relieved of an essential function of her job, the accommodation

12   would not have left her otherwise qualified for the job.  This is because a person is qualified only

13   if the person can and will perform *all* of a job's essential functions with or without an

14   accommodation.  *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1090 (9th Cir. 2007); *Dark*,

15   451 F.3d at 1089.  If the accommodation eliminates one of those essential functions, the employee,

16   *ipso facto*, cannot meet the requirement of performing *all* of the essential functions of the job.

17   Thus, the requested accommodation would make the employee unqualified.  The Court agrees and

18   finds that removing Martinez's e-Qip duties would not make her qualified for her position because

19   it would eliminate one of her essential job functions.  Accordingly, the Court grants summary

20   judgment on Martinez's discrimination claim both because her requested accommodation was

21   unreasonable and because the requested accommodation would actually make her unqualified for

22   the position.

23           **B.       Retaliation Claim**

24                    The same burden shifting analysis applies to this claim as to the prior claim.  To

25   establish a *prima facie* case of retaliation a plaintiff must show that: (1) she engaged in protected

26   activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link

AO 72
(Rev. 8/82)

1    exists between the protected activity and the adverse action.  *Coons v. Secretary of U.S. Dept. of*

2    *Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).  Once the plaintiff establishes a *prima facie* case of

3    retaliation, the employer has the burden to advance a legitimate, non-retaliatory reason for the

4    adverse employment action.  *Id*.  If the employer carries this burden by providing a non-retaliatory

5    reason, the plaintiff must demonstrate a genuine issue of material fact as to whether that reason

6    was merely a pretext to survive summary judgment.  *Id*.

7          Here, Defendant concedes that Martinez engaged in protected activity by requesting

8    an accommodation and suffered an adverse employment action when she was fired.  Defendant

9    even acknowledges, in reply, that the temporal proximity between the accommodation request and

10   the firing is sufficient to establish the *prima facie* element of a causal nexus.  Defendant instead

11   argues that he has shown a non-retaliatory reason for Martinez's firing and Martinez has not

12   shown that the reason was a pretext.  Thus, the Court must determine whether Defendant's

13   proffered reason for the termination is sufficient to carry its burden and whether Martinez can

14   sufficiently show that the reason was merely pretextual.

15            **1.      Non-retaliatory Reason for Termination**

16         Defendant argues that the undisputed evidence shows that Martinez was fired for

17   repeatedly failing to obey supervisory orders to register for e-Qip and not for requesting an

18   accommodation.  This is a sufficient, non-retaliatory reason for terminating an employee.  *Vasquez*

19   *v. Cnty of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (not abiding orders from direct

20   supervisors is a legitimate, non-discriminatory reason for adverse employment actions).  Thus the

21   Court now turns to whether the reason was a pretext for retaliation.

22            **2.      Pretext**

23         Pretext may be shown either: (1) through direct evidence of retaliatory intent, or (2)

24   indirectly by showing the employer's proffered explanation is unworthy of credence.  *Id*.

25   "'[C]ircumstantial evidence of pretext must be specific and substantial in order to survive

26   summary judgment.'"  *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003) (quoting

9

1    *Bergene v. Salt River Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001));

2    *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) ("Merely denying the credibility of the

3    employer's proffered reasons is insufficient to withstand summary judgment.")

4              Here, Martinez merely relies on the temporal proximity between her request for an

5    accommodation and her firing to show that VASNHS's reason for firing her was pretextual.  This

6    is far from sufficient to establish pretext under Ninth Circuit precedent.  *See Brown*, 336 F.3d at

7    1187-88 (temporal proximity of firing insufficient to overcome employer's proffered reason for

8    firing employee).  Here, VASNHS had suspended Martinez twice for failing to register with e-Qip

9    before she ever engaged in protected activity.  This demonstrates that VASNHS considered her

10   actions serious and shows that it was a legitimate reason for firing her.  Thus, mere temporal

11   proximity is insufficient where the employer demonstrated that Martinez's conduct was worthy of

12   discipline prior to any protected activity.  Accordingly, the Court finds that Martinez has failed to

13   carry her burden of demonstrating pretext and enters summary judgment on this claim.

14             As Martinez has failed to carry her burden on either of her claims, the Court grants

15   the motion and enters summary judgment on both claims.

16                                   **CONCLUSION**

17             Accordingly, and for good cause appearing,

18             IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#53)

19   is GRANTED.  The Clerk of the Court is directed to close this case.

20             Dated: January 6, 2012.

21

22                                   _____

23                                   **ROGER L. HUNT**
                                     **United States District Judge**

24

25

26