UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAURA MARTINEZ, ) | Case No.: 2:09-cv-01354-RLH-RJJ |
| Plaintiff, ) | **O R D E R** |
| vs. ) | (Motion for Summary Judgment–#53) |
| ERIC K. SHINSEKI, SECRETARY, ) DEPARTMENT OF VETERANS AFFAIRS, ) | |
| Defendant. ) | |

Before the Court is Defendant Eric K. Shinseki's **Motion for Summary Judgment** (#53, filed on Aug. 10, 2011). The Court has also considered Plaintiff Laura Martinez's Opposition (#56, filed Sept. 6), and Shinseki's Reply (#57, filed Sept. 13).

**BACKGROUND**

This dispute arises out of Martinez's firing from the Human Resources Department at the Veterans Administration's ("VA") Southern Nevada Health Care System ("VASNHS") in Las Vegas. Martinez suffers from central auditory processing disorder ("CAPD"), a disability. CAPD makes it more difficult to receive or understand information through the spoken word than through visual means such as personal demonstration. (Dkt. #53, Mot. Ex. 9, Martinez Dep. 16-

1

17.) In 1997, the VASNHS hired Martinez as a "Schedule A" employee, a position in the Excepted Service reserved for employees with disabilities. *See* 5 CFR § 213.3102(u)(6). In 1998, Martinez became a Personal Assistant in the HR Department and, in 2000, she became a "career conditional" appointee in the competitive service thus removing her from the excepted service under Schedule A. *See id.* In 2001, Martinez became a "career tenured" employee in the Competitive Service. Throughout her career with the VASNHS, Martinez's supervisor was Chief of Human Resources Don Zurfluh, who was aware of Martinez's disability.

Martinez's duties as a personal assistant included staffing the HR reception desk, advising applicants for employment about opportunities, posting vacancy announcements on the web, setting up files for open vacancies, placing applications in those files, generating related correspondence, generating and receiving email, beginning the background check process, and related tasks. (Dkt. #53, Mot. Ex. 7, 2001 Job Description.) One of Martinez's specific duties was to handle the initial background check paperwork that job candidates had to fill out. From 2004 through mid-2006 this was the Office of Personnel Management Standard Form 85 (Form 85). Martinez also fingerprinted the candidates. (*Id.*) Martinez performed these duties competently from 2001 through mid-2006 without a formal accommodation. However, in 2006, the Office of Personnel Management did away with Form 85 and implemented the Electronic Questionnaires for Investigation Processing program, known as e-Qip. Under this program an online equivalent replaced the paper Form 85.

As part of her job, Zurfluh required Martinez to register online for e-Qip so she could continue fulfilling her duties under a revised job description. (*Id.*, Ex. 8, Job Description; Ex. 5, U.S. Merit Systems Protection Board Hr'g Mins. 61:11-17.) Zurfluh instructed Martinez to register for e-Qip five times between July 20 and September 20, 2006, so that she could do e-Qip initiation for job applicants, which she failed to do. A co-worker, Kelly Wright, attempted to assist Martinez in registering at various times (it is unclear exactly how frequently). At least once, Wright and Martinez registered Martinez for e-Qip only to later find out that the registration failed

AO 72
(Rev. 8/82)

(it is unclear why). In October 2006, Zurfluh disciplined Martinez with a fourteen-day suspension due to her continued failure to successfully register. As Martinez was not registered with e-Qip, Wright had to fulfill Martinez's e-Qip initiation duties.

Between November 14 and January 9, 2007, Zurfluh ordered Martinez to register with e-Qip another four times. Martinez testified that she found the process too difficult and stress inducing to complete given the level of training she had received, though she had gone through the process at least once. (Dkt. #56, Ex. 1, 114, 119.) In March, Zurfluh suspended Martinez a second time for failing to register for e-Qip (also for two weeks). On April 2, Zurfluh emailed Martinez saying that she was to register by the end of business that day and to provide him proof. She again failed to register. However, on April 16, Martinez sent a memo to Zurfluh asking to be relieved of all e-Qip duties. (Dkt. #53, Ex. 14, Memo dated Apr. 16, 2007.) The memo said that she requested an accommodation based on her disability but did not specify how her CAPD affected her ability to register for e-Qip other than merely claiming that it was too hard. She also did not provide any medical documentation with the memorandum.

Zurfluh treated this memo as a request for an accommodation and submitted the memo to an Occupational Health Physician at VASNHS to determine whether Martinez was eligible for an accommodation. Zurfluh and the physician, Dr. Martin Mathiesen, then asked Martinez to provide medical documentation so as to make a decision on the accommodation request. However, Martinez never provided any supporting medical documentation explaining how her CAPD affected her ability to register with e-Qip or fulfill her e-Qip duties. (*Id.*, Ex. 9, Martinez Dep. 125:3-7.) On May 24, Zurfluh provided Martinez a memo stating that since she had not provided him any documentation that no further action would be taken on her accommodation request.

On May 21, Zurfluh gave a Notice of Proposed Removal based on Martinez's repeated failure to register with e-Qip and certain other infractions. On June 4, Martinez responded with a letter from her attorneys claiming discrimination and requesting an

accommodation, though without providing a suggested accommodation. (*Id.* Ex. 3.) On June 27, Martinez was fired.

Martinez then proceeded through the administrative process, challenging her firing and claiming that she was discriminated against. After failing at each level of the administrative process, Martinez filed this lawsuit on July 27, 2009. Martinez's amended complaint asserts two claims based on her firing: (1) failure to accommodate her disability in 2007 under the Rehabilitation Act; and (2) retaliation under the Rehabilitation Act. Now before the Court is Defendant's motion for summary judgment on all claims. For the reasons discussed below, the Court grants Defendant's motion.

## DISCUSSION

**I.   Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most

1  favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d
2  1100, 1103 (9th Cir. 1986).
3        The moving party bears the burden of showing that there are no genuine issues of
4  material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry
5  its burden of production, the moving party must either produce evidence negating an essential
6  element of the nonmoving party's claim or defense or show that the nonmoving party does not
7  have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."
8  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the
9  moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to
10 "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
11 The nonmoving party "may not rely on denials in the pleadings but must produce specific
12 evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
13 *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
14 show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285
15 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of
16 evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

17 **II.   Analysis**
18     **A.   Discrimination Claim**
19       Under the burden shifting framework applicable to this claim, *see Zukle v. Regents*
20 *of the Univ. of Cal.*, 166 F.3d 1041, 1046-47 (9th Cir. 1999), a plaintiff bears the burden of
21 presenting a *prima facie* showing that she was: (1) an individual with a disability; (2) otherwise
22 qualified for the job; and (3) subjected to discrimination because of her disability through the
23 denial of a requested accommodation, *see Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807,
24 816-17 (9th Cir. 1999). If the plaintiff satisfies this burden, the burden shifts to the defendant to
25 show: (1) the requested accommodation was not reasonable, or (2) the plaintiff would not be
26

qualified even with the requested accommodation. *See id*. at 816-17 (applying the standard in an educational setting).

For the purpose of this motion, Defendant does not contend that Martinez did not suffer from a disability. However, Defendant argues that the requested accommodation was not reasonable and that, regardless, the requested accommodation would not have rendered Martinez qualified.

### 1.     Reasonableness of Requested Accommodation

After repeated instruction to register for the e-Qip system, various offers of help to do so, and months of failing to do so, Martinez requested relief from her e-Qip duties as an accommodation. "The ADA [and, thereby, Rehabilitation Act] does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees." *Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006). Defendant argues that under this principle, Martinez's requested accommodation was *per se* unreasonable because she requested to be exempted from what Zurfluh testified was roughly 20-25% of her duties. (Dkt. 53, Ex. 6, Zurfluh Decl. ¶ 11.); *see also Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 991 (explaining the analysis of whether a particular function is an essential function of a job.)

#### i.     Essential Function

In response Martinez merely argues that her job description did not specifically reference the e-Qip program and, thus, there is a fact question as to whether e-Qip duties were an essential function of her job. (*See id.*, Ex. 8, Job Description.) This is insufficient to create a question of material fact when a supervisor testifies that this function is essential and would take up 20-25% of Martinez's day and Martinez admits that the prior paper equivalent of the e-Qip program was a significant part of her job. Thus, the Court finds that the e-Qip duties were an essential part of Martinez's job.

/

/

6

### ii. The Interactive Process and Alternative Accommodations

Martinez next argues that even if her e-Qip duties were a core or essential duty, an employer is obligated to pursue alternative accommodations and that VASNHS failed to do so. *See Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128, 1137-39 (9th Cir. 2001). This is generally true and is part of the interactive process mandated by the ADA and the Rehabilitation Act. However, it is undisputed that after receiving Martinez's request for an accommodation, VASNHS requested medical documentation from her (on multiple occasions) to be able to determine what accommodations would be possible. Martinez never provided the requested medical information or otherwise engaged with VASNHS in any type of interactive process to find a suitable accommodation. Rather, Martinez simply accuses VASNHS of not participating in the interactive process and alleges that specific reasonable accommodations were available.

The Court finds that it was Martinez that abandoned the interactive process, not VASNHS. In the interactive process, "employers must consult and cooperate with disabled employees so that both parties discover the precise limitations and the types of accommodations which would be most effective." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115 n.6 (9th Cir. 2000). However, it is not merely the employer's responsibility to communicate and cooperate. "Both sides must communicate directly, *exchange essential information*, and neither side can delay or obstruct the process." *Id.* at 1114-15 (emphasis added); *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) ("The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process.") Here, it was not only reasonable for VASNHS to seek medical information from Martinez in order to determine why she could not perform her assigned task, but practically mandated by the interactive process.[1] While her supervisor knew of

---

[1] It is possible that Martinez could have provided other information about how her disability impacted her ability to register for or otherwise complete her e-Qip tasks rather than providing actual medical information, but she does not present any evidence that she did anything to further the interactive process or explain the need for an accommodation other than merely stating that e-Qip was too hard for her.

7

her disability, mere knowledge of a disability does not equate to understanding all of the elements and limitations associated with that disability or how they would impact different tasks. Here, Zurfluh provided an accommodation even before one was requested by having another employee attempt to help Martinez register. When that failed, and Martinez requested a specific accommodation, he and a doctor sought out information to further the process. Thus, Martinez's refusal to provide medical information or initiate some other sort of discussion was an obstruction of the interactive process and shows that she abandoned that process.

### 2. Otherwise Qualified for the Position

Defendant's arguments here are essentially indistinguishable from his arguments above that Martinez's requested accommodation was unreasonable. Here, Defendant argues that since Martinez requested to be relieved of an essential function of her job, the accommodation would not have left her otherwise qualified for the job. This is because a person is qualified only if the person can and will perform *all* of a job's essential functions with or without an accommodation. *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1090 (9th Cir. 2007); *Dark*, 451 F.3d at 1089. If the accommodation eliminates one of those essential functions, the employee, *ipso facto*, cannot meet the requirement of performing *all* of the essential functions of the job. Thus, the requested accommodation would make the employee unqualified. The Court agrees and finds that removing Martinez's e-Qip duties would not make her qualified for her position because it would eliminate one of her essential job functions. Accordingly, the Court grants summary judgment on Martinez's discrimination claim both because her requested accommodation was unreasonable and because the requested accommodation would actually make her unqualified for the position.

### B.  Retaliation Claim

The same burden shifting analysis applies to this claim as to the prior claim. To establish a *prima facie* case of retaliation a plaintiff must show that: (1) she engaged in protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link

exists between the protected activity and the adverse action. *Coons v. Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). Once the plaintiff establishes a *prima facie* case of retaliation, the employer has the burden to advance a legitimate, non-retaliatory reason for the adverse employment action. *Id*. If the employer carries this burden by providing a non-retaliatory reason, the plaintiff must demonstrate a genuine issue of material fact as to whether that reason was merely a pretext to survive summary judgment. *Id*.

Here, Defendant concedes that Martinez engaged in protected activity by requesting an accommodation and suffered an adverse employment action when she was fired. Defendant even acknowledges, in reply, that the temporal proximity between the accommodation request and the firing is sufficient to establish the *prima facie* element of a causal nexus. Defendant instead argues that he has shown a non-retaliatory reason for Martinez's firing and Martinez has not shown that the reason was a pretext. Thus, the Court must determine whether Defendant's proffered reason for the termination is sufficient to carry its burden and whether Martinez can sufficiently show that the reason was merely pretextual.

### 1. Non-retaliatory Reason for Termination

Defendant argues that the undisputed evidence shows that Martinez was fired for repeatedly failing to obey supervisory orders to register for e-Qip and not for requesting an accommodation. This is a sufficient, non-retaliatory reason for terminating an employee. *Vasquez v. Cnty of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (not abiding orders from direct supervisors is a legitimate, non-discriminatory reason for adverse employment actions). Thus the Court now turns to whether the reason was a pretext for retaliation.

### 2. Pretext

Pretext may be shown either: (1) through direct evidence of retaliatory intent, or (2) indirectly by showing the employer's proffered explanation is unworthy of credence. *Id*. "'[C]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment.'" *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003) (quoting

1  *Bergene v. Salt River Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001));

2  *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) ("Merely denying the credibility of the

3  employer's proffered reasons is insufficient to withstand summary judgment.")

4        Here, Martinez merely relies on the temporal proximity between her request for an

5  accommodation and her firing to show that VASNHS's reason for firing her was pretextual. This

6  is far from sufficient to establish pretext under Ninth Circuit precedent. *See Brown*, 336 F.3d at

7  1187-88 (temporal proximity of firing insufficient to overcome employer's proffered reason for

8  firing employee). Here, VASNHS had suspended Martinez twice for failing to register with e-Qip

9  before she ever engaged in protected activity. This demonstrates that VASNHS considered her

10 actions serious and shows that it was a legitimate reason for firing her. Thus, mere temporal

11 proximity is insufficient where the employer demonstrated that Martinez's conduct was worthy of

12 discipline prior to any protected activity. Accordingly, the Court finds that Martinez has failed to

13 carry her burden of demonstrating pretext and enters summary judgment on this claim.

14       As Martinez has failed to carry her burden on either of her claims, the Court grants

15 the motion and enters summary judgment on both claims.

## CONCLUSION

17       Accordingly, and for good cause appearing,

18       IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#53)

19 is GRANTED. The Clerk of the Court is directed to close this case.

20       Dated: January 6, 2012.

_____
**ROGER L. HUNT**
**United States District Judge**